IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| SHOPSEE, INC.,<br><br>   Plaintiff,<br><br> vs.<br><br>TIKTOK INC.,<br><br>   Defendant. | Civil Action No. 7:24-cv-00333-DC-DTG |

## ORDER ON DISCOVERY DISPUTE

Plaintiff ShopSee, Inc. and Defendant TikTok Inc. raised the following four disputes surrounding the entry of a final Protective Order ("PO") in this case.

### Issue No. 1

The scope of in-house counsel with access to designated materials.

### Plaintiff's Position

*Argument*: ShopSee's modification to Default Order ¶5(c) responds to TikTok's demand for unfettered access to CBI for an *unlimited* number of *undisclosed* in-house counsel. TikTok refuses to limit access to CBI to a reasonable number of in-house counsel, but rather seeks access to CBI for *any* number—or even *all*—in-house counsel anywhere in the world. By refusing to share the signed Undertaking with ShopSee, TikTok's in-counsel, including in China and Singapore, can access CBI—produced by ShopSee or third parties—without anyone knowing who they are. Without disclosing *who* the parties' "designees" are (under 5(c) and 5(d)), there is no way of knowing who purportedly submits to the Court's jurisdiction for enforcement of the PO, rendering this provision meaningless. ShopSee, and if necessary, this Court, should know

1

exactly who has access to CBI, and who is within the purview of the Court's jurisdiction for enforcement of the PO.

TikTok provides no reason why its in-house counsel and designees who seek access to CBI refuse to be identified, and thus subject to the Court's jurisdiction, or why more than five in-house counsel require access to CBI.

No more than five in-house counsel should have access to CBI, and should be required to deliver the signed Undertaking to the other party. *See, e.g., Onyx Therapeutics, Inc. v. Cipla Limited et al*, 1-16-cv-00988, D.I. 67 (D. Del. Jul. 17, 2017) (permitting foreign in-house counsel to review "confidential information, provided that such counsel first agree to be bound by rules of professional conduct, submit to the jurisdiction of this Court for enforcement of the [PO], and declare that she is not involved in competitive decisionmaking").

***Relief Requested***: The Protective Order should reflect the following text: "Up to and including five (5) designated in-house counsel for the Parties that (i) are authorized to practice law in the United States or otherwise agree to submit to the Court's jurisdiction for enforcement of the Protective Order, (ii) who have completed the Undertaking attached as Appendix A hereto and delivered the completed Undertaking the other party, and (iii) who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action."

## Defendant's Position

***Argument***: Both parties started with Judge Albright's Sample Protective Order for Patent Cases ("Model Order"). ShopSee seeks to depart from the Model Order to limit the number of TikTok in-house counsel with access to Confidential materials. ShopSee has no facts or showing of good cause to support a limitation on the number of in-house counsel with access to Confidential Information.

In pursuit of compromise, TikTok accepted ShopSee's additional requirements for in-house counsel relating to the Court's jurisdiction and completing the Undertaking of the protective order. TikTok proposes following section 5(d) in not forcing a party to reveal their internal staffing and employee's information through delivering the Undertaking to the other party.

***Relief Requested***: The Protective Order should reflect the following text: "In-house counsel for the Parties that (i) are authorized to practice law in the United States or otherwise agree to submit to the Court's jurisdiction for enforcement of the Protective Order, (ii) who have completed the Undertaking attached as Appendix A hereto, and (iii) who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action."

## Issue No. 2

The scope of individuals with access to Confidential – Attorneys' Eyes Only material.

### Plaintiff's Position

***Argument***: To streamline the number of confidentiality levels, the parties agreed that materials marked AEO and "Confidential – Outside Attorneys' Eyes Only" ("OAEO") will be treated the same. Exhibit A ¶2. ShopSee seeks to align the AEO provisions with the language for OAEO from the Default Order. Default ¶¶9–10.

ShopSee's proposal conforms with the Default Order's OAEO provisions prohibiting in-house counsel from accessing OAEO/AEO material. *Id.* TikTok has not provided any explanation for a divergence, or why its *undisclosed* in-house counsel need access to ShopSee's or third parties' OAEO/AEO information, as opposed to summaries thereof. Notably, under TikTok's proposed ¶9 read along with its proposed ¶5(c), TikTok's unidentified in-house

3

counsel, worldwide, would have access to OAEO/AEO information *without* meaningfully being subject to enforcement of the PO. Additionally, TikTok's proposal allows its in-house counsel access to ShopSee's and third parties' OAEO/AEO material without being subject to the prosecution bar under ¶11.

Contrary to TikTok's position, ShopSee's proposal does not permit either party to share information without input from the other. ShopSee simply seeks to ensure representatives for ***both*** parties can be reasonably apprised of case developments as needed

***Relief requested***: The Protective Order should reflect the following text: "For Protected Material designated "CONFIDENTIAL - ATTORNEYS' EYES ONLY," access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a)–(b) and 5(e)–(h); provided that the designating Party shall accommodate reasonable requests for the receiving Party to provide redacted and/or summary information to individuals designated pursuant to paragraph 5(c)–(d) who reasonably require access to such information."

### Defendant's Position

***Argument***: ShopSee departs from the Model Order by seeking to bar any in-house counsel from accessing "CONFIDENTIAL – ATTORNEYS' EYES ONLY" material. The Model Order, which TikTok proposes here, already strikes an appropriate balance between allowing in-house counsel to participate in litigation while protecting a party's "CONFIDENTIAL – ATTORNEYS' EYES ONLY" material by limiting access to such information to just "in-house counsel who exercise no competitive decision-making authority." Moreover, in the interest of compromise, TikTok offered to limit in-house counsel access to only three individuals. ShopSee rejected even this compromise offer. ShopSee's motivation here is clear, as it admitted in the meet-and-confer that it has no in-house counsel, in effect making ShopSee's proposal a one-sided restriction on TikTok's in-house counsel's participation.

ShopSee should not be able to handicap TikTok's legal defense merely because this tactic has no downside to ShopSee.

Further, ShopSee expands beyond the Model Order by seeking to broadly distribute "summary information" of TikTok's highly sensitive information to their client, presumptively, their key competitive decision makers. ShopSee provides no justification for sharing TikTok's highly sensitive information. And ShopSee provides no limitation or procedural oversight on the contents of "summary information." This greatly expands the risk of inadvertent disclosure of TikTok's highly sensitive information by allowing non-attorney competitive decisionmakers access.

*Relief Requested*: The Protective Order should reflect the following text: "For Protected Material designated "CONFIDENTIAL - ATTORNEYS' EYES ONLY," access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a)–(c) and 5(e)–(h); but no more than three (3) of the individuals under paragraph 5(c); provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client."

## Issue No. 3

The scope of provisions for production of source code, including the volume of source code printouts, the number of copies, the process for requesting more than 100 pages of printouts, and the process to request to exceed the limits defined in the provision.

**Plaintiff's Position**

*Argument*: ShopSee proposes reasonable limits on Source Code printouts and copies, and seeks to minimize the number of subsequent disputes.

First, Default Order ¶11(h) allows the Receiving Party to make a "reasonable number" of printouts. To alleviate disputes regarding what is "reasonable," ShopSee proposed 500 pages of

5

Source Code printouts, absent good cause for seeking additional pages. In contrast to *MasterObjects*, there are several accused features across TikTok's platform in the ambit of ShopSee's infringement claims. Dkt. 28. TikTok seeks to unduly limit ShopSee's ability to use source code as part of its infringement case.

Second, as a compromise, ShopSee offered to limit the number of copies of printouts to five. TikTok fails to provide any support for slashing "***presumptively***" ***ten*** copies from Default Order ¶11(h) to its proposed ***cap of three***.

Third, TikTok arbitrarily demands that "no more than 100 pages of printouts may be requested within any 5 business days." TikTok fails to provide any rationale for this restrictive limit that injects needless, arbitrary delays.

Fourth, ShopSee proposes "or agreed by the parties" for making additional printouts of Source Code, which allows for timely resolution of issues among the parties to jointly stipulate without requiring Court intervention.

***Relief Requested***: The Protective Order should reflect the following text: "The Receiving Party shall be permitted to make up to 500 pages of printouts of Source Code Material, all of which shall be designated and clearly labeled "CONFIDENTIAL - SOURCE CODE." The Receiving Party must identify the Source Code Material the Receiving Party requests for printing by specifying the relevant full file paths, file names, and file line number in a written request to the producing Party. Print requests may be up to 25 consecutive pages. The Producing Party shall provide five (5) copies of all such requested printouts of source code in paper format that includes Bates numbers and the confidentiality designation "CONFIDENTIAL - SOURCE CODE," within five (5) business days of Receiving Party's request for source code printouts. The Receiving Party is not permitted to make printouts or photocopies of the Source Code Material unless ordered by the Court or agreed by the Parties, nor is the Receiving Party

permitted to convert any printouts of the Source Code Material to electronic form except as explicitly provided in this Protective Order or required to comply with a Court Order. The Receiving Party may make reasonable requests to exceed these limits for good cause if needed and, if such a request is denied by the Producing Party, the receiving Party may raise its request to exceed these limits with the Court after a meet and confer between the Parties"

### Defendant's Position

*Argument*: ShopSee seeks 500 pages of printouts, five copies of each printout, and requiring production of all printouts within 5 days of their request. TikTok proposes reasonable limits on the number of source code printouts (200 pages), copies (3 copies), and a limit of producing 100 pages of source code printouts within any 5 days. These provisions are critical to protecting TikTok's source code. *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 (Fed. Cir. 2016) (recognizing that "source code … is often a company's most sensitive and most valuable property").

ShopSee's printout demands create disclosure risks for TikTok's source code. TikTok requests that the Court enforce reasonable printout limitations. *MasterObjects, Inc. v. Facebook, Inc.*, Case No. 6:20-CV-00087-ADA, Dkt. 36 at 21:5-9 (W.D. Tex. Jun. 3, 2020) ("So I think it's pretty standard in my court that we start off at 250 pages, which we're going to do here"). The single patent-in-suit's narrow claims do not require voluminous printouts. *See, e.g., id*. (setting a 250-page limit where four patents were asserted). TikTok's proposal imposes reasonable limits ensure adherence to the safeguards for Source Code Material. Printouts should supplement, not replace, comprehensive review on the secure computer.

In addition, ShopSee's request for five copies per printout are excessive given this is a one patent case. TikTok proposes three copies, which allow simultaneous review by the technical expert responsible for opining on infringement and up to two outside attorneys. Nothing more is

7

necessary or warranted.

Finally, producing Source Code Material, similar to producing other documents, incurs review and production costs to the producing party, both monetary and as lost time. Defendant's 100-page-per-five-business-day limit minimizes these cost burdens. This avoids future disputes where the requesting party burdens the producing party with a request for many or even all printouts (which, under ShopSee's proposal, may consist of up to 500 pages) immediately prior to a deadline.

Of course, the protective order allows for a good cause showing to modify TikTok's reasonable printout limitations if necessary.

***Relief Requested***: The Protective Order should reflect the following text: "The Receiving Party shall be permitted to make up to 200 pages of printouts of Source Code Material, all of which shall be designated and clearly labeled "CONFIDENTIAL - SOURCE CODE." The Receiving Party must identify the Source Code Material the Receiving Party requests for printing by specifying the relevant full file paths, file names, and file line number in a written request to the producing Party.  Print requests may be up to 25 consecutive pages.  The Producing Party shall provide three (3) copies of all such requested printouts of source code in paper format that includes Bates numbers and the confidentiality designation "CONFIDENTIAL - SOURCE CODE," within five (5) business days of Receiving Party's request for source code printouts but no more than 100 pages of printouts may be requested within any 5 business days.  The Receiving Party is not permitted to make printouts or photocopies of the Source Code Material unless ordered by the Court, nor is the Receiving Party permitted to convert any printouts of the Source Code Material to electronic form except as explicitly provided in this Protective Order or required to comply with a Court Order. The receiving Party may make reasonable requests to exceed these limits for good cause if needed and, if such a request is denied by the producing

Party, the receiving Party may raise its request to exceed these limits for good cause with the Court after a meet and confer between the Parties."

## Issue No. 3

Whether Defendant's attorneys should be subject to a prosecution bar.

### Plaintiff's Position

*Argument*: The prosecution bar in the Default Order should apply to *both* parties. TikTok demands a one-sided prosecution bar, applying only to ShopSee.

Imposing a prosecution bar requires the Court to balance the risk of inadvertent disclosure or competitive use of confidential information against restrictions on the party's right to have the benefit of its counsel of choice. *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1380 (Fed. Cir. 2010). *Both* parties engage in the preparation and prosecution of patent applications. Just last week, TikTok served a discovery request seeking access to ShopSee's confidential patent prosecution documents, while actively prosecuting its own competing patent portfolio. A two-way prosecution bar is proper here to ensure that both sides' CBI is not prone to improper use, including through patent prosecution.

TikTok offers no basis for allowing its counsel to access and use CBI produced in this case in prosecuting its own patent applications. None exists. Just like TikTok, ShopSee has and will be producing highly confidential information, including source code. *See* Exhibit A ¶10(a). And TikTok counsel exposed to ShopSee and other third party CBI could just as easily and inadvertently use it to its client's benefit. Contrary to TikTok's characterizations, this is ShopSee's first patent litigation case. TikTok also cites no support for its allegations that ShopSee is a non-practicing entity. Nor would that be dispositive. *See Affinity Labs of Texas, LLC v. Samsung Electronics Co.*, 2013 WL 12138892, at *5 n.3 (E.D. Tex. Nov. 18, 2013) (ordering a mutual prosecution bar even where defendant argued that plaintiff had no products or

source code). TikTok cites to *Ring Plus*, but that plaintiff was a patent holding company. *Ring Plus*, at *4. The same facts are not applicable here. On this record, the applicability of a prosecution bar is "equally appropriate" for all parties. *Id.*

A two-way prosecution bar is also important in this case, where TikTok seeks to allow an unlimited number of *undisclosed* in-house counsel, anywhere in the world, to have unfettered access to CBI. *Supra* ¶¶5(c), 9. The prosecution bar should be mutual.

***Relief Requested*:** The Protective Order should reflect the following text: "Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals. To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit. Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, e.g., IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s)."

**Defendant's Position**

*Argument:* TikTok opposes a mutual prosecution bar because the two parties are not similarly situated. TikTok's proposed version restricts individuals from advising or consulting on amendments of any patent applications, specifications, or claims if they receive TikTok's highly sensitive material. Currently, ShopSee has pending continuations in the family of the patent-in-suit. *See, e.g.,* U.S. Patent Application No. 19/092,852 and U.S. Patent Application No. 18/582,537. These unilateral bars are necessary to protect TikTok's intellectual property when allowing a litigious and non-practicing entity's counsel and experts to review highly sensitive material that could inform that entity's own pursuit of intellectual property that could later be asserted against TikTok. *See* ShopSee's First Amended Complaint (Dkt. 28), ShopSee's Preliminary Infringement Contentions. The same is not true for ShopSee because it is a non-practicing entity with no products. *See* ShopSee's First Amended Complaint (Dkt. 28), ShopSee's Preliminary Infringement Contentions.

Courts routinely impose unilateral prosecution bars when parties are not similarly situated, as here. *Ring Plus, Inc. v. Cingular Wireless, LLC*, No. 2:06-cv-159, 2007 U.S. Dist. LEXIS 102190, at *11-13 (E.D. Tex. Jul. 24, 2007) (Dkt. No. 127) (explaining that "[a] one-way prosecution bar is not uncommon" and is appropriate in circumstances where "the parties are not similarly situated") (citing cases). This case presents a situation nearly identical to *Smartflash LLC v. Apple Inc.*, where Magistrate Judge Mitchell found that a unilateral prosecution bar against the plaintiff's counsel was appropriate. No. 6:13-cv-447, 2014 WL 10986995 (E.D. Tex. May 12, 2014) (Dkt. No. 139). In that case, the plaintiff did not sell any products and was therefore not similarly situated to the defendants, and Judge Mitchell found "the prosecution bar should be limited to [the plaintiff's] attorneys who review Defendants' highly sensitive information." *Id*. at *1. Here the parties are not similarly situated because unlike TikTok, ShopSee does not currently sell any products and does not compete in the social media industry.

ShopSee does not dispute that a prosecution bar should apply to its counsel, but it offers no reasonable rationale for why a bar should apply to TikTok's counsel

***Relief Requested***: The Protective Order should reflect the following text: "Any attorney representing Plaintiff, whether in-house or outside counsel, and any person associated with Plaintiff and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals.  To ensure compliance with the purpose of this provision, Plaintiff shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit.  Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, e.g., IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s)."

## **ORDER**

After considering the parties' respective position statements submitted to the Court by email on May 30, 2025, and oral argument during a Zoom hearing held on June 2, 2025, the Court orders the following:

**Issue No. 1**: The Court **GRANTS** Plaintiff's requested relief to enter ShopSee's

proposed language in paragraph 5(c) and treat the disclosure of designated individuals the same as paragraph 5(d).

**Issue No. 2**: The Court **GRANTS** Plaintiff's requested relief to enter ShopSee's proposed language in paragraph 9.

**Issue No. 3**: The Court **GRANTS-IN-PART** Plaintiff's requested relief to enter ShopSee's proposed language in paragraph 10(h) except the Receiving Party shall be permitted to make up to 250 pages of printouts of Source Code Material.

**Issue No. 4**: The Court **GRANTS** Plaintiff's requested relief to enter ShopSee's proposed language in paragraph 11.

The parties are ordered to file the Proposed Protective Order reflecting the Court's rulings on the docket for entry by the Court.

SIGNED this 12th day of June, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE